Thank you. Kavrenko v. Garland is submitted on the briefs, so the next case for argument is Al Rikabi v. Garland. Counsel, you may proceed. Thank you, Your Honor. Can you hear me okay? Yes. Okay, wonderful. May it please the Court, Jessica Arena on behalf of the petitioner, Mr. Al Rikabi, I would like to reserve two minutes for rebuttal and I will watch the clock. Mr. Al Rikabi petitions for review of this denial of his asylum request. We concede there are no other requests for relief for this court. This case turns on the nexus between persecution and a protected ground and on the likelihood of future persecution. Mr. Al Rikabi has presented two claims for asylum. First, he suffered past persecution from Sunni extremists, ISIS, on account of his Shiite Muslim faith. This is his claim based on past persecution, which triggers a presumption of a well-founded fear. Second is his claim based on the likelihood of future harm from Shiite extremists who would target him because of his Sunni first name. On the nexus of the past persecution claim, the IJ's extemporaneous oral decision found that Mr. Al Rikabi's testimony, quote, did not shed any light as to why ISIS had threatened him and his family. The BIA affirmed the IJ's nexus finding on the basis that Mr. Al Rikabi, quote, acknowledged that no one knew who made the threats against them or planted the bomb. Contrary to the agency's determination, Mr. Al Rikabi repeatedly testified that ISIS had targeted him and his family because they are Shiite Muslims. He testified that he and his family received phone threats and text messages from ISIS threatening that they must convert to Sunni Islam or leave the region. Those who transmitted the threats identified themselves as from ISIS. An IED was planted at their home during this time and two months after the threats began, another IED was planted in the car that Mr. Al Rikabi and his father used to commute to and from work each day. That bomb detonated while Mr. Al Rikabi was in the car with his father and he watched his father, quote, be blown in pieces. Mr. Al Rikabi explained these facts repeatedly to the agency below. He identified ISIS and their religious motive in his credible fear interview. He did again on his form at 589. He did again in his written declaration to the immigration judge and then again in his oral testimony before the immigration judge. Despite all of this, the agency relied on a single statement of testimony taken out of context. Of course, Mr. Al Rikabi did not know the names or precise identities of his persecutors, but he had every reason to believe that it was ISIS. On cross, Mr. Al Rikabi was asked, do you know who placed the bomb? And he began by referring to the phone threats from ISIS to his family in the months leading up to the car bomb. The IJ cut him off and directed him to say yes or no. He replied, no, I don't know. Of course, Mr. Al Rikabi did not personally witness who planted the car bomb, but he had every reason to believe that ISIS planted the car bomb because ISIS had repeatedly and recently threatened to harm this family and had planted an explosive at their home. The circumstantial evidence is consistent with the country conditions and compels a different result. The agency's failure to consider this evidence militates remand. The agency must consider circumstantial evidence, including statements by persecutors. The agency should also be considering the timing of the persecution. The agency also misstated the evidence and engaged in speculation and finding that no one took responsibility for the car bomb. ISIS took responsibility before the fact and their threats. The immigration judge speculated about whether, when, and how ISIS would take responsibility for such an act. Moreover, the IJ decision misstates the timing of the events. The decision places the threat to his mother much earlier in time than it occurred. This mistake is crucial because the circumstantial evidence of motive may be included based on the timing of persecution. You mentioned country conditions a moment ago, and the government in its brief says that the country conditions support the board's decision because they show that there was just a lot of generalized sectarian strife and violence. And I guess the inference that one could draw from that is, there were lots of people engaged in violence, so we don't necessarily know that it was the same people who were threatening. Petitioner, what's your response to that? In the threats, the people making the threats claimed to be from ISIS, and they also stated, you must join our extreme Sunni faith or leave the region. So even if there's general violence anywhere, there can still be targeted violence on account of a protected ground religion in this situation. Ms. Arena, I understand from the record that Mr. Abu Qabi was a Shia Muslim from a Sunni region in Iraq. Is that correct? Yes. So he was in a minority in a region dominated by the Sunni faith, correct? Yeah, yes. And you mentioned the time difference. The time difference was not a year and two months, but it was six months. There was a time lag of six months, was there not, after the threat to the bombing? Between the threats and the bombing, the threats continued on. I believe it was only two months between the last threat and the bombing. And in that time, there was also a bomb placed in their house. There was repeated threats by phone, by text message, another bomb placed in their house, and then this final event, which caused Mr. Abu Qabi to flee. And so, I mean, I guess there's a, I mean, Judge Bennett's question sort of highlights the fact that there are different groups that are in a majority in different regions, which raises the question of potential relocation. But I take it if we agree with you on past persecution, how should we think, or let me, the question is how should we think about relocation, if we agree with you on past persecution? Sure. If you agree that there's past persecution here, then the court needs to remand back to the IJ in order for the burden to shift to the government to establish that they've rebutted an assumption of well-founded fear. Pursuant to the CFR specifically requiring that past persecution gives rise to a rebuttable presumption, correct? Right. And in this situation, Mr. Abu Qabi wasn't given that rebuttable presumption. And that must happen if the court agrees there's past persecution here. Can I just, I want to be sure I understood what you said at the very beginning, which is you are at this point only asserting an asylum claim and not asking us to do anything with withholding or a cap. Yes, Your Honor. That's correct. On the topic of nexus, before I switch to the independent well-founded fear argument, operative here is that there is no other, there's no other logical reason that Mr. Abu Qabi and his family were targeted. Often in asylum cases, we'll see a multiple motive situation where maybe a family was also being targeted for some revenge or extortion or some other logical basis. And so there becomes a mixed motive analysis required. But in this case, there's no other logical reason that this family was specifically targeted. ISIS, the callers who identified themselves as ISIS were very specific, join us or leave. And immediately following, soon after following that, there's bombs. So that's actually a novice, novice. In that case, it talks about there's no other logical reason for nexus that we need to find that there's a nexus here. There's a second claim as to the future harm. And this is based on imputed Sunni religious beliefs. Because although he's a Shia, he has a Sunni first name. And so based on this record, there's no reasonable fact finder could conclude that Mr. Abu Qabi did not meet his relatively low burden, that it is probably true that he faces a 10% chance of persecution. Based on his imputed Sunni religious beliefs. The agency committed numerous legal errors in considering his independent alternative claim of future harm based on his imputed Sunni religious beliefs. First, the IJ failed to apply the correct legal standard for internal relocation determinations. And most blatantly, the IJ never considered the reasonableness factors set forth in the regulations. Such an analysis would require consideration of factors such as whether an applicant would face other serious harm. This did not occur. Instead, the BIA improperly made this factual determination in the first instance. Therefore, remand to the immigration judge is necessary for this to occur in the first time. Because some of the evidence not considered the first time includes country condition evidence that Shia extremists target perceived Sunnis. This evidence includes reports that Shia militias operate checkpoints and that Shia militias have targeted, kidnapped, disappeared, tortured and killed men when they are identified as Sunnis. Other important errors that the agency made is that the BIA incorrectly relied on the fact that none of Mr. Al-Rakabi's siblings have ever been harmed. Critically, none of them have Sunni first names. And even still, one of his brothers in Iraq has been targeted by Shia militias because he is from a Sunni region. And Mr. Al-Rakabi's brother was forced to relocate. What is more, the agency ignored evidence that Mr. Al-Rakabi's other brother and mother are safe in Iraq only because they live in a small area controlled by a humanitarian organization where his mother works. The agency ignored evidence that Mr. Al-Rakabi cannot live with his sister because she is married and her family will not take him. And the IJ did not allow Mr. Al-Rakabi to finish his testimony about why he is in danger throughout Iraq, cutting him off as he was about to explain why he could not live in the province where his sister is, was it? So we respectfully request this court first to remand the case back to the IJ, shifting the burden for the well-founded fear to the government to be rebutted. And if not that, then we respectfully ask this court to remand the case back to the immigration judge to engage in a reasonableness finding as to relocation. Thank you, counsel. You can save the rest of your time for rebuttal and we'll hear from the government. Thank you. Good morning, your honors. May it please the court, Andrew Nsinga on behalf of the attorney general. What petitioner fails to discuss is this court's deferential standard of review. The court must find that the record is so compelling that no reasonable fact finder could have possibly found that petitioner did not and will not suffer persecution. The record in this case does not compel that conclusion. Nor do petitioner's errors, the scattershot errors which were raised often not to the agency or often misstate the agency's findings and the record. Those do not demonstrate any error or prejudice. For past persecution, petitioner wants this court to simply ignore his explicit testimony that he did not know who planted the bomb. That alone is record evidence, substantial evidence supporting the agency's determination. No one knows for sure, I suppose, except the bomber. But the circumstantial case is quite strong, isn't it? I mean, he gets a call from ISIS saying, you know, we are going to kill you because you're not, you know, unless you convert. There follows, you know, two months of, you know, threats of violence from this same group of people. And then they put a bomb in his car. I mean, isn't that a pretty strong circumstantial case? That is circumstantial evidence, Your Honor, but doesn't compel any reasonable fact finder to conclude. Again, when Petitioner 6 officially conceded, he did not know. I mean, are you familiar with our decision in Madrigal against Holder? I'm not sure. Not enough to specifically. Yeah, I mean, so we said there that when the petitioner has some theory of nexus that is plausible and supported by circumstantial evidence, it has to be credited in the absence of some other explanation that's at least as plausible. One can debate whether that's really consistent with the substantial evidence standard, but that's what we've said. And it sort of has a sort of common sense underpinning to it. So what is the contrary explanation here of who else might have planted this bomb, if not the people who had been threatening him with violence? Well, first, Petitioner was free to make that argument both to the board and his court, but Petitioner did not do so. Essentially, I think what Your Honor is suggesting is exactly what the Supreme Court rejected in Ming Dai. The United Supreme Court said that the agency is free to credit some, part, or all of a person's testimony. But what it's not obligated to do is simply assume something to be sufficient or persuasive simply because an otherwise credible witness says it. So to the extent that argument would be raised, it would be contrary to the unanimous Supreme Court's decision in Ming Dai. Faced with the deferential standard of review and in Ming Dai, Petitioner otherwise asserts a variety of errors that simply don't reflect an accurate reading of the record. Petitioner suggests that the immigration judge simply referred to the testimony, not referring to motive or the actor. Well, that is wrong for two reasons. One, the immigration judge's decision on AR-77 immediately discussed the declaration that did mention the threats to the phone. So the immigration judge did consider this circumstantial evidence. Any suggestion to the contrary ignores the immigration judge's decision. Second, the testimony didn't mention the explicit motivation. Petitioner's reply brief cites AR-263 and 264 and suggests that it was discussing conversion. It didn't. So what we're left here is there is something to add. I'm sorry, but his testimony before the IJ didn't, but his declaration said, in 2013 my mother received a phone call. When she answered it, the caller said, you know, we are the Islamic State of Iraq and demand you to convert to Sunniism and be a supporter of our cause. So, I mean, he did. It wasn't just a random threat. But it was a threat tied to his religion, as he described it, right? That is as he described it. And the immigration judge, I mean, what Your Honor just read is explicitly in the immigration judge's decision on AR-77. So when petitioner alleges an error, the immigration judge didn't consider it. The only error here is petitioner does not read the immigration judge's decision. The immigration judge considered this circumstantial evidence. But as Ming Dai says, the immigration judge may credit against some part or all. In some sense, this reflects a problem that Ming Dai discusses. Petitioner explicitly testified, I do not know who did this. And then later on, on page 266, he's asked why did they do this. He said there's chaos over there. Petitioner's argument would essentially have said the immigration judge can't rely on his explicit testimony. That makes little sense. Petitioner testified, again, I do not know, and there's chaos over there. And, again, we know that there is, unfortunately at the time in 2013, there was a fair amount of sectarian violence. Mr. Renzick, just to follow what Judge Miller asked earlier, I understand that this Court's opinion in Madrigal v. Holder, if I'm pronouncing it correctly, is that if there is any kind of plausibility stated, then it's up to the agency to at least provide some other explanation that is at least as plausible. So where, again, I don't know what your answer is as to what is at least plausible, that it was random violence and there were other bombings of other cars having nothing to do between the Shia and the Sunni. What is the other plausible explanation on the record? I don't know of anything in the record indicating any suggestion of something that's just as least plausible. If I'm missing something, tell me. Well, what is plausible is we don't know. The substantial evidence— No, no, no, I'm sorry. I don't mean to cut you off, but that's—no, I'm sorry. That's just not adequate. You just can't say, well, we don't know, so it's not as plausible. There has to be some suggestion. For example, it may be at the time of the bombing of the car there were a series of other car bombings. There may have been bombings as to American military personnel. There may have been random acts of violence in a particular time period, so then there's some plausibility of no connection. But to say that the—at least as I understand Madrigal v. Holder, to say that there must be some other explanation at least as plausible, at least as plausible, that standard to me is not met by saying we just don't know because someone can't identify specifically the bombers. Well, you know, I would emphasize two things. First of all, petitioners never discuss Madrigal. I can attempt to respond as appropriate as necessary, but there is a potential that what you're discussing has been overruled by Ming Dai. That is why a petitioner needs to raise issues in the opening brief. A petitioner did not raise it. I would like to attempt to answer questions as best I can, but that is difficult when a petitioner does not raise an issue in an opening brief. But the second answer is that is adequate. Would you agree, counsel, that there's no mixed motive in this case? I mean, if you say, for example, in gang extortion cases and so forth, there can be some mixed motives, but is there any alternative explanation for a motive in this case? Petitioner's own testimony. There's chaos over there. What the—what Judge Linden's question— But on the motive, he testified both in his declaration and at the hearing, ISIS threatened us, and nobody disputes the car bombing. The immigration judge absentee credibility finding does not dispute that it occurred, but the plausible explanation, again, comes in the concept of the substantial evidence review. It can be stated two ways, that there's substantial evidence that supports the agency's decision, and that often sounds like an affirmative concept. There is—we know another motive, and that motive is not protected. That is one way we could phrase it. But the other way is often said that the record must compel. But what if all petitioner says is, I don't know? Well, then how does the petitioner who bears the burden of proof before the agency and now bears the burden of persuasion to this court under very deferential standard review, what is being suggested is that the immigration judge has to ignore petitioner's explicit statement that he does not know who did it. Yes, there's circumstantial evidence. Yes, the immigration judge considered it. But under Ming Dai, the immigration judge is the fact finder who's supposed to be persuaded. And what this court has to ask and what petitioner needs to discuss but does not discuss is, how is no reasonable fact finder allowed to say, well, he said no, I don't know, and there's chaos over there? A reasonable fact finder cannot, is compelled to not rely on his explicit testimony. That is exactly what Ming Dai says when the discourse prior presumption of credibility and sufficiency, it turns the burden of proof on its head. Well, Ming Dai was involved. Our jurisprudence gave credit as true. I'm not sure it goes as far as you're suggesting because I think under your suggestion, the government can never lose. I disagree, Your Honor. The suggestion of the government can never lose. But when a litigant specifically testifies, I don't know, a fact finder is relied to rely on it. We can imagine a witness to a crime saying, I think this, I think this, and this petitioner says, repeatedly says it. But then when pushed about foundation, oh, I don't know. What petitioner's argument suggests that? Well, it depends on how you read the record. I mean, he did testify ISIS threatened, both in his declaration and at the hearing. And the fact that he doesn't know specifically who made, the individuals who made the threat doesn't really destroy that testimony, does it? Destroy? No, the immigration judge could consider it, and the immigration judge did consider it. The question is whether or not any reasonable fact finders compel to rely on that circumstantial evidence to say, absolutely, we know that ISIS did this, and we know they were motivated by this. But what petitioner is, relies on at times, and then other times ignores, is the vast amount of sectarian strife. Petitioner relies on his own brother being attacked by Shia militants in Baghdad because some sort of extortion, or he's perceived as Sunni, behaved somewhat unclear. But the actor is completely different. Can I ask you to, I'm sorry to interrupt, just to clarify your Ming Dai argument. Are you suggesting that, so the IJ made an adverse credibility finding. The board did not address that. Are you suggesting that the board might have not believed what he said about the threats that preceded the bombing? That's not what the immigration judge, this is an alternative finding. The board relied on this alternative finding. This is not a believability issue, and that's what Ming Dai emphasizes. So your point is that even accepting that he really did get the threats, that we just don't know that the bombing was actually associated with the threats rather than with some other kind of violence. Accepting that he testified that he received the threats. Again, Ming Dai emphasizes that credibility, insufficiency, and persuasiveness are obviously related. But the example in Ming Dai is indicative of the situation that you can have someone, I believe they say, talk about the example. Someone can say, I went through the light during the traffic case, and it was green. A fact finder can make a finding that essentially says, well, that's not true or sufficient, but it doesn't have to say that person's lying because that's the job of a fact finder. I mean, again, this is a unanimous Supreme Court. This is the job of the fact finder. But Ming Dai also recognized that the INA says, absent an explicit adverse credibility determination, the applicant has rebuttable presumption of credibility on appeal. It's right in Ming Dai, and it's quoting the statute. I think you're talking apples and oranges here in terms of – I mean, Ming Dai was about our accept, if our credit is true, jurisprudence, which it overruled. That's a little bit different from your argument today. I don't believe it is, Your Honor. Your Honor's question suggests that the government has to come up with a plausible explanation. That turns the burden of proof on its head. It is not the government's burden, whether before the immigration judge or before this court, to offer any answers. I can say exactly as Petitioner said, I don't know, because we don't know. And again, Petitioner said he does not know. That alone does not compel any reasonable fact finder to find that he faced harm on account of his religion when his father was allegedly bombed. I see my time is up. Unless, Your Honor, you have any further questions, we ask the court to deny the petition. Thank you, counsel. Thank you, Your Honor. Rebuttal. Thank you, Your Honor. First, to speak to the IJ's reference to the threat to his mother about converting or leaving the region, I'd just like to point out, it's on the record at page 78, that the immigration judge erred significantly on the timing of the threat. He places that threat prior to the family going to Syria for one year. The family went to Syria for one year in 2006 after being threatened by al Qaeda. But the threat that the mother received, saying, we, the Islamic State of Iraq, demand you convert to Sunni and be a supporter of our cause, that occurred just months before the bombing. So I just want to make that point clear. And to the point that Petitioner failed to raise an argument somewhere, I would just like to point out that Petitioner did raise NAVAS versus, one moment, versus the INS, the 9th Circuit 2000 decision. And it stands for the same proposition as Madrigal v. Holder, the later decision, in which if there's no other logical conclusion for the events, then that's substantial evidence that compels a remand, as it does in this case. If there's no further questions from the court. It appears there are not. Thank you, counsel. We thank both counsel for their helpful arguments, and the case is submitted.
judges: THOMAS, MILLER, Bennett